## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

COURTNEY R. WEBB,                          )
                                           )
            Plaintiff,                     )
                                           )        Civil Action No. 21-1739
      v.                                   )        Judge Nora Barry Fischer
                                           )
                                           )
CLAIRTON CITY SCHOOL DISTRICT,             )
                                           )
            Defendant.                     )
                                           )

## MEMORANDUM OPINION

### I.  INTRODUCTION

Plaintiff Courtney Webb alleges that she suffered a hostile work environment and disparate treatment because of her race while working for her former employer Defendant Clairton City School District. (Docket Nos. 1, 20). Clairton has filed a Motion to Dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Docket No. 21). Presently before the Court are Clairton's Motion to Dismiss and Brief in Support, (Docket Nos. 21; 22); Webb's Response, (Docket No. 23); and Clairton's Reply, (Docket No. 25). After careful consideration of the parties' positions and for the following reasons, Clairton's Motion to Dismiss [21] is granted.

### II.  FACTUAL BACKGROUND

The following allegations come from Webb's second amended complaint, (Docket No. 20), as well as two attachments to Webb's second amended complaint: (1) notes detailing Webb's experience at Clairton that she submitted with her charge to the Equal Opportunity Commission ("EEOC") and (2) an unsigned copy of her employment contract with Clairton, (Docket No. 20-

1

2).[1] The Court assumes these allegations are true for purposes of the present motion.

Webb, an African American woman, began working for Clairton on January 19, 2015 as the "Confidential Secretary" to the Director of Federal Programs & Curriculum. (Docket Nos. 20 at ¶¶ 6, 16; 20-1 at 9-13). She had an employment contract with Clairton which had an expiration date of June 30, 2018. (Docket No. 20-1 at 9). Webb reported to Debra Maurizio, the Federal Programs Coordinator and an elementary school principal. (Docket No. 20 at ¶ 16). She also reported to Dr. Ginny Hunt, Clairton's superintendent. (Docket No. 20-1 at 4). Webb's chief allegations focus on the differences in her job duties between the person who previously held her role, a white woman named Gayle Colonna, and herself. (Docket Nos. 20 at ¶ 18; 20-1 at 3). When Webb took over Colonna's role, Colonna continued to serve in another secretarial role at Clairton and worked for Hunt. (Docket No. 20 at ¶ 18).

In an attachment to her complaint, Webb provides a table detailing what responsibilities Colonna held when working as the "Confidential Secretary" compared to what duties Webb held when working in the same role. (Docket No. 20-1 at 3). For example, Colonna had access to software called "Egrants," while Webb had restricted access. (Docket No. 20-1 at 3). Colonna would attend audit meetings, but Webb did not attend these meetings. (Docket No. 20-1 at 3). Each year of Webb's employment, Hunt would go shopping at the beginning of the school year and once in the spring semester. (Docket No. 20 at ¶ 19). Upon her return from shopping, Hunt would call Webb "to go and carry the bags [Hunt] had with her." (Docket No. 20 at ¶ 19). Hunt did not ask Colonna to assist with carrying bags. (Docket No. ¶¶ 18, 20). During these episodes, Webb "would glance to see what Colonna was doing but would not see her doing anything [which] would have

---

[1]     Regarding Webb's attachments to her second amended complaint, the Court notes that "Courts may consider matters of public record, exhibits attached to the complaint, and undisputedly authentic documents attached to a motion to dismiss." *Del. Nation v. Pennsylvania*, 446 F.3d 410, 413 n.1 (3d Cir. 2006).

meant that Hunt would not have asked her (Colonna) to carry the bags." (Docket No. 20 at ¶ 20).

Webb's secondary set of allegations involve frustration with how her superiors worked with her. For example, she complains that she was "given zero information for what my role was," and that her supervisors "refused to provide [her] with information from" an auditor "letting me know what would be reviewed" during an audit. (Docket No. 20-1 at 7-8). As another example, she alleged that "Deb (my supervisor) had me attend meetings making it look like I was included. She would pick my brain for ideas and then I wouldn't be asked BUT she would use my ideas." (Docket No. 20-1 at 8). At certain unspecified times, Maurizio told Webb that she "did not 'know what to do with'" Webb. (Docket No. 20 at ¶ 21). Webb would respond, "Let me do my job." (Docket No. 20 at ¶ 21). Instead, "Maurizio assigned her tasks that were not part of [Webb]'s job responsibilities nor were these tasks assigned to Colonna." (Docket No. 20 at ¶ 21).

On other occasions, someone asked Webb to "clean and inventory an empty swimming pool that was being used to store old textbooks," (Docket No. at 20 at ¶ 22), and to "clean out [an] art room in [the] elementary school." (Docket No. 20-1 at 3, 5). The pool lacked ventilation, windows or good lighting. (Docket No. 20 at ¶ 22). The art room was "[s]mall and dark," had "no windows," and was "secluded." (Docket No. 20-1 at 5). In both instances, "[t]he task took several hours and all of the text messages and phone call(s) [Webb] made" to her superiors to obtain clarification regarding the cleaning assignments were met with silence. (Docket Nos. 20 at ¶ 22; 20-1 at 5).

When Webb began to work at Clairton, she had a workstation near Maurizio. (Docket No. 20 at ¶ 27). Later, Maurizio moved to the elementary school to serve as its principal, leaving Webb alone. (Docket No. 20 at ¶ 27). She repeatedly requested to be moved so that she was near "the team," but was told that no space existed to accommodate her request, even though the Home

Economics room was open. (Docket No. 20 at ¶ 27). As a result, weeks would go by when Webb could not speak with Maurizio. (Docket No. 20 at ¶ 27).

During the 2017 football season, someone asked Webb to sell tickets at home football games. (Docket No. 20 at ¶ 23). To reach the ticket booth, Webb had to walk through the men's restroom, which meant that those visiting the men's restroom could reach the ticket booth. (Docket No. 20 at ¶ 23). As she puts it, "[a]fter being assigned to work that booth alone several times despite mentioning the unsafe nature to those in charge, Plaintiff resigned as a ticket taker on or about October 20, 2017 because her concerns regarding her safety were not being addressed although she verbalized them." (Docket No. 20 at ¶ 23).

Webb's third set of allegations include harsh or inappropriate comments made by Webb's superiors. She notes that at some point someone "questioned my doctor's appointments and condition" despite their knowledge that Webb was a cancer survivor. (Docket No. 20-1 at 2). Webb provides no additional detail regarding this questioning. On several occasions during their phone conversations, Hunt hung up on Webb, even though Webb was in mid-sentence. (Docket No. 20 at ¶¶ 28-29). Once, after hanging up on Webb, Hunt sent an email implying that Webb was "derelict in her duties" for failing to provide certain documents, even though the alleged dereliction would have been solved if Hunt had listened to Webb instead of hanging up. (Docket No. 20 at ¶ 28).

During a meeting one day, Hunt "tried to embarrass [Webb] by yelling at [her] by telling everyone that [Webb had] printed out the wrong" document for review at the meeting. (Docket No. 20-1 at 6). Hunt then went on a "tangent" about how "Asian nail technicians speak and started imitating them." (Docket No. 20-1 at 7). At another point, while reviewing some student survey data, Hunt said that she "could not understand why children would need to pick 'multicultural,'"

4

in the survey and pondered why the students would "not just pick one" culture. (Docket No. 20-1 at 8).

Regarding her separation from Clairton, Webb explained that she was "under contract until June 30, 2018, but they escorted [her] out on June 4, 2018." (Docket No. 20-1 at 2, 9). Someone at Clairton had "presented [Webb] with a [new] contract on the previous Friday, that was vague at best." (Docket No. 20-1 at 2). Webb said that she "wanted to have it looked over," but then Clairton apparently reversed course and "rescinded the offer on that Monday, June 4, 2018." (Docket No. 20-1 at 2). On that day, someone told her "to turn in [her] keys and to clean out [her] office." (Docket No. 20-1 at 4). She submitted her original charge of discrimination to the EEOC on April 4, 2019, which she dual-filed with the Pennsylvania Human Relations Commission ("PHRC"). (Docket Nos. 20 at 2; 20-1 at 1).

### III.  PROCEDURAL HISTORY

Webb sued Clairton in state court on November 1, 2021. (Docket No. 1-1 at 7). Clairton removed the suit to federal court on November 30, 2021 and filed a motion for a more definite statement. (Docket Nos. 1, 2). In the motion, Clairton asked for details about when Webb filed her charge of discrimination with the EEOC and signaled that it intended to seek a dismissal of Webb's complaint, in part, because she filed it beyond the 300-day time limit for filing Title VII claims. (Docket No. 2 at 3-4). Webb responded with an amended complaint on January 17, 2022. (Docket No. 12). Clairton again filed a motion for a more definite statement, and Webb, after obtaining leave of the Court, again filed an amended complaint. (Docket Nos. 15, 16, 18). Clairton then filed a motion dismiss, Webb responded, and Clairton replied. (Docket Nos. 21, 22, 23, 25). As such, the Court considers Clairton's motion fully briefed and ripe for disposition.

### IV.  LEGAL STANDARD

A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In deciding a Rule 12(b)(6) motion, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). While "accept[ing] all of the complaint's well-pleaded facts as true," the court "may disregard any legal conclusions." *Id.* at 210-11.

To survive the motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

To assess the sufficiency of a complaint under *Twombly* and *Iqbal*, a court must take three steps: (1) outline the elements the plaintiff must plead to state a claim for relief; (2) peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth; (3) look for well-pled factual allegations, assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). The court's plausibility determination is "a context-specific task that requires the reviewing court

to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The Third Circuit requires a court to "permit a curative amendment" of a complaint, "unless an amendment would be inequitable or futile." *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2002). Lastly, while courts generally do not consider affirmative defenses at the motion-to-dismiss stage of a case, they may be addressed when they appear on the face of the complaint. *See Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 259 (3d Cir. 2014).

## V.   DISCUSSION

Webb brings three counts all premised on her suffering a hostile work environment because of her race: Title VII (42 U.S.C. § 2000e-2); 42 U.S.C. § 1981; and the Pennsylvania Human Relations Act (43 P.S. § 951 *et seq.*) ("PHRA"). Webb also appears to allege a disparate treatment claim under Title VII, § 1981, and the PHRA because Clairton terminated her employment on June 4, 2018. (Docket No. 20-1 at 1-2).[2] Clairton argues that all of Webb's claims are subject to dismissal for failure to state a claim. (Docket No. 22 at 9).

Having carefully considered the parties' arguments, the Court holds that Webb's claims brought under Title VII and PHRA, whether for hostile work environment or disparate treatment, are untimely because she did not submit an administrative charge (or complaint) with either the EEOC or the PHRC within the time frames required by the applicable statutes. Indeed, Webb

---

[2]      Webb refers to her separation from Clairton as a "constructive discharge," but a constructive discharge occurs when an employee resigns. *Green v. Brennan*, 578 U.S. 547, 555 (2016) ("A claim of constructive discharge therefore has two basic elements. A plaintiff must prove first that he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign. But he must also show that he actually resigned."); (Docket No. 20-1 at 1-2). As the Court reads the allegations, instead of Webb resigning, Clairton terminated Webb's employment by telling her to clean out her desk and escorting her from the building on June 4, 2018 prior to the scheduled expiration of her contract on June 30, 2018. (Docket No. 20-1 at 2). In any event, the Court's conclusion regarding Clairton's motion to dismiss does not change because her claims are untimely as they accrued on June 4, 2018, regardless of whether she asserts constructive discharge or termination.

appears to concede that the Title VII and PHRA claims are untimely. (Docket No. 23 at 3) (stating that Webb "will leave the court to decide whether her Title VII and PHRA claims are time-barred" without providing an argument for why they are not time barred). Additionally, Webb's § 1981 claims are barred by the applicable statute of limitations. As such, the Court will dismiss her complaint, with prejudice. The Court's rationale follows, starting with Webb's failure to timely exhaust her administrative remedies.

## A.  Webb's Title VII and PHRA Claims Are Untimely

"'A plaintiff must exhaust all required administrative remedies before bringing a claim for judicial relief.' This includes timely filing a charge of discrimination with the PHRC and the EEOC within the statute of limitations before bringing suit." *Mahan v. City of Phila.*, 296 F. Supp. 3d 712, 717 (E.D. Pa. 2017) (quoting *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 164 (3d Cir. 2013)). For Title VII claims, a plaintiff in Pennsylvania must file a "charge" with the EEOC within 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e). For "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire," a plaintiff must file charge within 300 days of when the act "happened." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110, 114 (2002). For hostile work environment claims, a charge falls within the 300-day limitations period if "at least one act" of the acts making up the hostile work environment claim "falls within the [300-day] time period." *Morgan*, 536 U.S. at 122. For PHRA claims, a plaintiff must file a "complaint" with the Pennsylvania Human Relations Commission within 180 days "after the alleged act of discrimination." 43 P.S. § 959(h). Courts construe Title VII and the PHRA in the same manner. *See, e.g.*, *Vandervoort v. Pa. Sch. Bd. Ass'n*, 2022 WL 954461, at *9 n.6 (W.D. Pa. Mar. 30, 2022) (citing *Bailey v. Storlazzi*, 729 A.2d 1206, 1211 n.6 (Pa. Super. Ct. 1999)).

As numerous decisions have held, a plaintiff cannot suffer from a hostile work environment if she is not at work. *See, e.g.*, *Doe v. DeJoy*, 2020 WL 6482545, at *6 (E.D. Pa. Nov. 4, 2020) (holding that because a plaintiff did not "return to work after April 22, 2019 at the latest, he could not have suffered from any discriminatory conduct constituting a hostile work environment after April 22, 2019"); *Harris v. Postmaster Gen. of the U.S.*, 2022 WL 336999, at *3 (3d Cir. Feb. 4, 2022) ("The limitation period for Harris's hostile work environment claim began no later than the last day Harris was at his workplace."); *see also Mercer v. SEPTA*, 608 F. App'x 60, 63-64 (3d Cir. Apr. 1, 2015); *Kowalski v. Brennan*, 2019 WL 1409724, at *6-7 (W.D. Pa. Mar. 8, 2019) (Lenihan, J.) (explaining that a plaintiff's last day at work was December 27, 2011, so the limitations period for his hostile work environment claim began to run from December 27, 2011). Thus, the statute of limitations clock begins to run on the plaintiff's last day of work (if not sooner) because none of the acts making up the hostile work environment claim happened after the plaintiff ceased working. *Morgan*, 536 U.S. at 122; *Harris*, 2022 WL 336999, at *3.

On the face of her complaint, Webb explains that she ceased working at Clairton on June 4, 2018, even though her contract expired on June 30, 2018. (Docket No. 20-1 at 2, 9). She also alleges that June 4, 2018 was the date that she was terminated by Clairton. (Docket No. 20-1 at 2). Finally, she filed her charge of discrimination with the EEOC 304 days later, i.e., on April 4, 2019. (Docket No. 20-1 at 1). Thus, Webb filed her charge with the EEOC more than 300 days after (1) Clairton terminated her contract, the discrete act for her disparate treatment claim, and (2) the last day in which she could have suffered from a hostile work environment. *Morgan*, 536 U.S. at 110, 114, 122; (Docket No. 20-1 at 1). As such, both her disparate treatment and hostile work environment claims brought under Title VII are untimely.[3] For the same reasons, Webb's disparate

---

[3]    The Courts also notes that Webb appears to have waited too long to file her Title VII claims, given that the EEOC issued a right-to-sue notice on May 13, 2021, and she sued on November 1,

treatment and hostile work environment claims brought under the PHRA are untimely because she made her administrative filing more than 180 days after the alleged discrimination. Accordingly, the Court will grant Clairton's motion to dismiss Webb's Title VII and PHRA claims.

### B.  Webb's § 1981 Claim Is Untimely

Webb's § 1981 claims do not require administrative exhaustion like her Title VII and PHRA claims. Clairton, however, is a government actor and thus, under *McGovern v. City of Philadelphia*, she must bring her § 1981 claim pursuant to the remedy-creating provision of 42 U.S.C. § 1983. 554 F.3d 114, 115-16, 120-21 (3d Cir. 2009) (holding that "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units" (internal quotation marks and citation omitted)); *B.D. v. Cornwall Lebanon Sch. Dist.*, 2021 WL 1253522, at *17 (M.D. Pa. Apr. 5, 2021).

In Pennsylvania, § 1983 actions are subject to a two-year statute of limitations. *Sameric Corp. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998); *Kirby v. Allegheny Cnty. Office of Children, Youth, & Families*, 2022 WL 1203846, at *1 (W.D. Pa. Apr. 22, 2022) (Ranjan, J.). As noted above, Webb's claims accrued on June 4, 2018 when she was escorted from Clairton. (Docket No. 20-1 at 2, 9). She initiated this lawsuit against Clairton in state court on November 1, 2021, or more than 3 years after the events in this case. (Docket No. 1-1 at 7). Therefore, the Court will dismiss Webb's § 1981 claim because she did not bring it within the time required by the statute of limitations for § 1983 claims. *See, e.g.*, *Bytner v. Allegheny Cnty. Jail*, 2018 WL 4407837, at *4 (W.D. Pa. Sept. 17, 2018) (Fischer, J.); *Ford v. Se. Pa. Trans. Auth.*, 374 F. App'x

---

2021. *Rockmore v. Harrisburg Prop. Serv.*, 501 F. App'x 161, 164 (3d Cir. Oct. 17, 2012) ("[A] civil action under Title VII must be commenced within 90 days of receiving a right-to-sue letter from the EEOC."); (Docket Nos. 1-1 at 7; 20-3).

325, 326 (3d Cir. Mar. 26, 2010) ("Furthermore, Ford's [§ 1981] claim arose on the date of his termination: September 12, 2005. Thus, any amendment to his complaint would have been futile, as Ford filed his suit in April 2008, and any additional claims would be time-barred under § 1983's two-year statute of limitations.").

### C.  Amendment of Webb's Pleading Would Be Futile

The Court's finally considers whether the dismissal of Webb's second amended complaint should be with prejudice or without prejudice. The Third Circuit has held that in civil rights cases "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008); *see also Grayson v. Mayview State Hosp.*, 293 F.3d 103, 113 (3d Cir. 2002). "Leave to amend may be denied for futility if 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'" *Hayden v. Westfield Ins. Co.*, 586 F. App'x 835, 841 (3d Cir. 2014) (quoting *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

Here, the Court finds that any further amendment of Webb's claims would be futile given the Court's analysis of the claims set forth above. To that end, Webb has alleged on the face her complaint when she ceased working for Clairton on June 4, 2018, and this allegation shows that her complaint is untimely, regardless of what other factual allegations she could bring against Clairton. *Ford*, 374 F. App'x at 326 (affirming a district court's futility determination because "any amendment to [the plaintiff's] complaint would have been futile, as [he] filed his suit in April 2008, and any additional claims would be time-barred under § 1983's two-year statute of limitations."); *Lutz v. Philips Elec. N. Am. Corp.*, 347 F. App'x 773, 777 (3d Cir. Oct. 8, 2009) (affirming dismissal of complaint with prejudice because the statute of limitations barred the plaintiffs from bringing suit). Likewise, it appears to the Court that Webb waited more

11

than 90 days to file her Title VII claims, given that the EEOC issued a right-to-sue notice on May 13, 2021, and she sued on November 1, 2021, making the futility of granting her leave to amend all the more apparent. (Docket Nos. 1-1 at 7; 20-3).

In addition, Webb filed two amended pleadings in this matter and has not affirmatively sought leave to file a third amended complaint nor supplied this Court with a proposed pleading such that leave to amend may be denied on these grounds as well. (Docket Nos. 2, 15, 21, 23); *N.Y. Cent. Mut. Ins. Co. v. Edelstein*, 637 F. App'x 70, 74 n.5 (3d Cir. Feb. 1, 2016) ("Appellants were put on notice by Appellees' Motion to Dismiss . . . that their Second Amended Complaint may fail to allege a breach of contract claim," but they did not "request leave to amend their Second Amended Complaint . . . [and instead] argued . . .that their Second Amended Complaint successfully alleged a" breach of contract."); *see also Bonasorte v. City of Pittsburgh*, No. CV 18-0243, 2019 WL 1593720, at *6 (W.D. Pa. Apr. 15, 2019). Finally, Webb's second amended complaint contains extensive detail regarding her experience at Clairton, and it appears that she "has said all that she could say," making further amendment futile. *Newman v. Point Park Univ.*, 2022 WL 969601, at *29 (W.D. Pa. Mar. 31, 2022) (Hornak, J.). For all of these reasons, Webb's claims will be dismissed, with prejudice.

## VI. CONCLUSION

Based on the foregoing, Clairton's Motion to Dismiss [21] is GRANTED, and Webb's second amended complaint is dismissed, with prejudice. An appropriate order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

Date: May 16, 2022

cc/ecf: All counsel of record.

12